UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cv-62236-JB

CliC Goggles, Inc., CliC Eyewear Inc.
and Eyewear From Barcelona, S.L.,

    Plaintiffs,

v.

Palm Beach Accessories, Inc.,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

    Defendant Palm Beach Accessories, Inc. ("Defendant" or "PBA") opposes Plaintiffs CliC Goggles, Inc.'s, CliC Eyewear Inc.'s, and Eyewear From Barcelona, S.L.'s (collectively, "Plaintiffs") Motion for Leave to File a Second Amended Complaint ("Motion"), which is merely a belated attempt to add a frivolous false marking claim. As further described in Plaintiffs' complaint, the parties have been in a business relationship for years. At no time during this relationship or during the months that Plaintiffs have been accusing PBA of infringement did Plaintiffs ever inquire into any patent marking issue. Then, on January 2, 2024, Plaintiffs informed PBA that they "recently" discovered a patent marking issue but even admit they lacked good cause to bring the claim. Now, without any new information and only after the stipulated deadline to amend has passed, do Plaintiffs wish to assert a false marking claim.

    Plaintiffs still lack the good cause to bring this claim. Plaintiffs have not (and cannot) provided sufficient facts and information to meet the heightened pleading requirements of a false marking claim or credibly allege how they have been damaged by any alleged false markings. In

fact, their statements and actions, which contradict their allegations, show they have not been harmed.

This amendment is simply a baseless attempt to harass PBA and increase Plaintiffs' leverage to extract a favorable settlement. Plaintiffs' motion fails to show they have good cause to amend under Rule 16 and have failed to meet the burden for amendment under Rule 15. Plaintiffs' amendment is futile, belatedly brought in bad faith, prejudices PBA, and otherwise lacks good cause. (Dkt. 24.) Plaintiffs' Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  PLAINTIFFS DEVELOP FALSE MARKING CLAIM AFTER SUING.

The Parties have a long history together, including a long-working relationship that ended in 2022, and Plaintiffs have never raised a patent marking issue until after initiating this suit. (*See* Dkt. 14 (First Amended Complaint ("FAC") at ¶ 27; Declaration of Gregg Friedmann at ¶¶ 2–3.) Prior to initiating this lawsuit, Plaintiffs sent a letter to PBA on September 14, 2023, claiming infringement of their trademark and patent rights, with specific mention to PBA's SNAP products. (Dkt. 14-5.) In the initial communications between the parties, there was no mention of "false marking" or MAGZ product. (*Id.*) On Sept. 27, 2023, Plaintiffs sent another letter to PBA, with only a cursory mention that PBA's MAGZ products were also being sold on PBA's website. (Dkt. 14-6). This letter did not discuss "false markings" or that Plaintiffs were anticipating bringing such a claim. (*Id.*) Plaintiffs filed their original complaint on November 22, 2023, where they asserted claims for trademark infringement, false designation of origin, and unfair competition. (Dkt. 1.) The original complaint did not address the MAGZ products nor any suggestion of any "false marking" claim. (*Id.*) On November 30, 2023, Plaintiffs contacted PBA again, via letter, but still did not make any mention of false marking or the MAGZ product. (Toft Decl. Ex. 1.)

Then, on January 2, 2024, Plaintiffs filed their FAC to include claims of patent infringement. (*See* Dkt. 14.) In the FAC, Plaintiffs included screen captures from December 2023 of PBA's magzeyewear.com website. (*See id*. at ¶¶ 45–47 (stating the screen captures are from December 13 and last accessed December 29).) Plaintiffs did not allude to any "false marking" in the FAC. (*See generally id*.) The same day, and just weeks after admittedly spending time looking through MAGZ website and products, Plaintiffs wrote to PBA and stated, "it has **recently come to our attention** that PBA may be falsely marking its MAGZ products with the statement 'patent pending' when apparently no such patent is pending…. [which] would violate 35 U.S.C. § 292(b), providing CliC with grounds for a cause of action and damages." (*See* Dkt. 29-2 (emphasis added).)

Indeed, prior to January 2, 2024, Plaintiffs had never inquired into any purported marking on the MAGZ products. (Friedmann Decl. at ¶ 2.) To date, Plaintiffs have yet to identify any product it wished to sell but for this purported marking or other facts supporting the claims in their Second Amended Complaint. (*Id.*) The "patent pending" mark Plaintiffs allege is somehow false or infringing is not used on any current products. (*Id.* ¶ 3.) Further, no product was ever marked with a patent number, indicating a patent had issued. (*Id.* ¶ 2.)

After the filing of the FAC, the Parties began settlement discussions, where they proposed the potential of providing information pursuant to FRE 408 that would help the parties settle this dispute, including sales and licensing information as well as patenting activity. (Toft Decl. at ¶ 3.) No agreement to exchange information was ever reached and, to date, no information has been produced, pursuant to FRE 408, by either side. (*Id.*)

II. **PLAINTIFFS SET THE DEADLINE TO AMEND PLEADINGS AND THEN MISS THE DEADLINE.**

On March 27, 2024, Plaintiffs provided a draft report with a proposed case schedule. (Toft Decl. at ¶ 4.) In their case schedule, Plaintiffs proposed the deadline to amend pleadings be April

3

12, 2024. (*Id.*) While the parties modified other dates to arrive at the proposed schedule submitted to the court on April 1, 2024, the agreed upon deadline to amend pleadings remained April 12, 2024. (Dkt. 24 at 2.) In addition, Plaintiffs specifically noted in the stipulation filed with the Court that they "anticipate[d] the ***need*** to amend the pleadings to state a claim of false patent marking under 35 U.S.C. § 292 against Defendant" and would do so on or before April 12, 2024. (*Id.*)

Despite this deadline, Plaintiffs did not file, seek leave to file, or request an extension to file an amended complaint asserting "false marking" by April 12, 2024. (Toft Decl. at ¶ 5.) In fact, Plaintiffs did not reach out to PBA for any reason between the filing of the joint stipulation on April 1 and April 16. (*Id.*) On April 16, 2024, Plaintiffs wrote to say that without information from PBA—on a claim not in the case—that "we can only assume that this is in fact a case of false marking." (Dkt. 29-6 at 1.) Plaintiffs then asked PBA to "stipulate to moving the proposed deadline to amend pleadings out to June 21, 2024" as well as grant consent to Plaintiffs to file a second amended complaint to add a false marking claim. (*Id.*) PBA declined this request and further stated it did not see how Plaintiffs had a basis to bring this claim on the merits, much less after the deadline. (Toft Decl. at ¶ 6.)

Plaintiffs have admitted that when they "filed their Amended Complaint [on January 2, 2024], they ***did not yet have a good faith basis to assert a claim for false marking*** under 35 U.S.C. § 292(b). (*See*, *e.g.*, Mot. at 1 (emphasis added).) Plaintiffs have not identified any information they have learned since January 2, 2024 that would change this fact. (*See generally* Mot. (Dkt. 29) and Second Amended Complaint (Dkt. 29-11).)

## ARGUMENT

I.     STANDARD

Rule 15 of the Federal Rules of Civil Procedure provides that a plaintiff may amend his or her complaint once as a matter of course within twenty-one days after serving it or within twenty-

4

one days after the earlier of service of the responsive pleading or service of a motion under Rule 12(b), (e), or (f). Fed.R.Civ.P. 15(a)(1). Thereafter, a plaintiff may amend his or her complaint only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). At times, leave can be freely given, (*see id*.), but this Court has stated that "under Rule 15, there are many instances in which leave to amend ***should not be given***, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Lifecell IP Holdings, LLC v. Cosmedique, LLC*, No. 0:19-CV-60978 RAR/JB, 2020 WL 9607038, at *8 (S.D. Fla. July 16, 2020) (citations omitted and emphasis added), *report and recommendation adopted*, No. 19-CIV-60978-RAR, 2020 WL 9607034 (S.D. Fla. Aug. 14, 2020) (denying motion to amend under both Rules 15 and 16). Plaintiffs acknowledge this by specifically stating that leave may be denied for reasons "such as undue delay, bad faith or dilatory motive on the part of the movement, [] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." (Mot. at 7 (citing *Marksman Sec. Corp. v. P.G. Sec., Inc*., No. 19-62467-CIV, 2022 WL 2340999, at *2 (S.D. Fla. Jan. 5, 2022) (citing *Rosen v. TRW, Inc*., 979 F.2d 191, 194 (11th Cir. 1992)).)

Under Rule 16, a party must show good cause to amend the schedule. *Smith v. Sch. Bd. of Orange Cnty.,* 487 F.3d 1361, 1366 (11th Cir. 2007) (citing Fed. R. Civ. P. 16(b); *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998)). The good cause standard enunciated in Rule 16(b) "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa,* 133 F.3d at 1418 (citing Fed. R. Civ. P. 16 advisory committee's note). "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry . . . ." *Lord v. Fairway Elec. Corp.,* 223 F.Supp.2d 1270, 1277 (M.D. Fla. 2002)

5

(citing *Sosa,* 133 F.3d at 1418); *see also Sanchez v. H & R Maint., L.C.*, 294 F.R.D. 677, 678–79 (S.D. Fla. 2013), 294 F.R.D. 677, 678–79 (S.D. Fla. 2013) (denying motion for leave to amend finding a lack of diligence by plaintiff is discovery and utilizing the information that formed the basis of its proposed amendment).

Here, the Parties have an agreed upon schedule filed with the Court and therefore Rule 16 should apply. But even under the more lenient Rule 15 standard, Plaintiffs' Motion still fails.

## II.     PLAINTIFF'S LACK GOOD CAUSE FOR AMENDMENT UNDER RULE 16.

Plaintiffs lack good cause under Rule 16, which is the standard that should be applied. Voluntarily submitted pretrial stipulations are generally considered binding. *See Busby v. City of Orlando*, 931 F.2d 764, 771 n.4 (11th Cir. 1991). Indeed, "matters stipulated to in a pretrial order are binding on the parties unless modified." *Feazell v. Tropicana Prods, Inc.*, 891 F.2d 1036, 1040 (11th Cir. 1987). Under Local Rule 16.1, the parties filed a Joint Scheduling Report and Proposed Scheduling Order in which the parties agreed to an amendment deadline of April 12, 2024. (Dkt. 24.) Thus, this deadline is binding.

To demonstrate "good cause" to modify a binding schedule, the moving party must show that they could not have complied with their deadlines despite their diligence. *See Sosa*, 133 F.3d at 1419 (affirming the district court's denial of plaintiff's motion to amend under Rule 16 the complaint for lack of good cause, attributed to plaintiff's lack of diligence). When assessing diligence, a court may consider if: (1) the information supporting the proposed amendment was available to the plaintiff, (2) the plaintiff failed to ascertain facts before filing the complaint and to acquire information during the discovery period, and (3) even after acquiring the information, the plaintiff delayed in asking for amendment. *Lord*, 223 F. Supp. 2d 1270, 1277. "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry." *Id.* at 1277, citing *Sosa*, 133 F.3d at 1418. "In assessing diligence, the court should consider whether plaintiff

failed to gather facts before filing the complaint and acquire information during discovery." *Lord*, 223 F. Supp. 2d 1270, 1277. Plaintiffs have failed to act diligently and otherwise demonstrate good cause for leave to file their Second Amended Complaint.

Indeed, despite purportedly *knowing about the alleged patent marking for years* and allegedly being harmed by it, (*see* Dkt. 29-11 at ¶¶ 56–65), Plaintiffs never raised a patent marking issue. Notably, during this time, the parties were also working together and PBA was selling Plaintiffs' products. (*See supra* Factual and Procedural Background § I.) Despite this, Plaintiffs failed to ask PBA about it until months after initially sending demand letters and already amended their complaint once. Moreover, all the information supporting Plaintiffs' proposed amendment, (*see id*.), was available to Plaintiffs when they filed their original complaint in November 2023. Plaintiffs aim to deflect the Court's focus from these facts by asserting their Motion for Leave to Amend is in response to PBA's denial of requested information (for which there is no obligation to provide) and the anticipation of ongoing refusal during discovery (for which there is no basis). (*See* Mot. at 17.) However, without a clear demonstration of newly acquired information or diligence by Plaintiffs to investigate the marking issue before December 2023 or January 2024, Plaintiffs' Motion lacks the requisite showing of good cause or diligence. *See Lord*, 223 F. Supp. 2d 1270, 1277 (denying plaintiff's motion for leave to amend, holding "the court cannot find that there was diligence on the part of plaintiff" when plaintiff failed to timely use investigative tools to bolster support for his now proposed claim); *see also Callwood v. Jones,* 727 Fed. Appx. 552 (11th Cir. 2018) (holding that if the record reflects that a plaintiff had the information necessary to make an amendment and failed to timely do so, a district court may properly deny a motion to modify a schedule).

For these reasons and for those further outlined with respect to Rule 15 below, Plaintiffs lack good cause to amend, and their Motion should be denied.

### III. PLAINTIFF'S REQUESTED AMENDMENT FAILS UNDER THE MORE LENIENT RULE 15.

Plaintiffs, who already amended once as a matter of right, falsely state that no substantial reason exists to deny their Motion to amend again under Rule 15. In reality, there are several reasons to deny Plaintiffs' Motion: (1) Plaintiffs' addition of a claim of false marking is futile, (2) Plaintiffs' claim of a false marking claim is not brought in good faith, and (3) Plaintiffs' delay in amending their complaint until now is caused solely by their own actions and is just an attempt to increase litigation costs and otherwise burden or prejudice PBA. This warrants denial of Plaintiffs' Motion.

#### A. Plaintiffs' Additional Claim is Futile.

"[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (same); *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822–23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." ); *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Aguilar v. United Floor Crew, Inc.*, No. 14-cv-61605, 2014 WL 6751663, at *2 (S.D. Fla. Dec. 1, 2014) (same).

To state a claim for false marking, the plaintiff must allege that the defendant "(1) mark[ed] an unpatented article (2) [with] intent to deceive the public." *Advanced Cartridge Techs., LLC v.*

*Lexmark Int'l, Inc.*, No. 8:10-CV-486-T-23TGW, 2010 WL 2640137, at *1 (M.D. Fla. June 30, 2010). "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Herengracht Grp. LLC v. Intelligent Prod., Inc.*, No. 10-21785-CIV, 2011 WL 938995, at *3 (S.D. Fla. Mar. 16, 2011) (citing *Clontech Labs., Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed. Cir. 2005)). In addition, to have standing, Plaintiffs must be able to adequately show a competitive injury. *See Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015). Plaintiffs must also establish a "causal connection" between defendant's use of the false mark and plaintiff's alleged injury. *See Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 624–25 (D. Del. 2014). Courts also apply the heightened pleading standard under Rule 9(b) to claims of false marking. *See Herengracht Grp. LLC,* 2011 WL 938995, at *4 (applying a Rule 9(b) heightened pleading standard to a false marking claim and noting that "[t]he bar for proving deceptive intent in false marking case is particularly high and requires relators to show a purpose of deceit, rather than simply knowledge that a statement is false."); *see also In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) (applying Rule 9(b)'s standard to false patent marking claims).

Here, Plaintiffs have admitted that did not have enough information to bring this claim in either their original or first amended complaints. (Mot. at 1.) Importantly, ***nothing has changed since then***. Indeed, Plaintiffs have not shown the "who, what, when, why, or how" of their false marking claim. Plaintiffs fail to state (i) what part of PBA's MAGZ product affected Plaintiffs' decision making, (ii) which product(s) or proposed products were affected by the concern of infringement, (iii) whether Plaintiffs had taken any steps in the design, manufacture, or distribution of said product(s), (iv) when Plaintiffs sought to introduce these product(s) and/or when they held

9

off from marketing the product(s), (v) who was affected by the alleged infringement concern if they released their product, etc. Put simply, the Motion lacks factual basis for adding the false marking claim and it should be denied. This alone should be dispositive. In addition, Plaintiffs have not stated, and cannot state, a claim under the heightened pleading standard applicable to this claim.

### 1. Plaintiffs Have Not Shown—and Cannot Show—Competitive Injury.

Plaintiffs provided only a conclusory statement that both CliC and Eyewear of Barcelona were prevented from selling competing products with a similar design to the MAGZ product because of PBA's indication that it had patent rights. (SAC at paragraph 61.) This is insufficient.

First, Plaintiffs own words and actions contradict this. "While the Court must accept well-pled facts as true, it need not assume the truth of conclusory allegations, nor are plaintiffs entitled to have the Court view unwarranted deductions of fact or argumentative inferences in their favor." *IOTC Air, LLC v. Bombardier Inc.*, No. 11-22861-CIV, 2012 WL 13013072, at *4 (S.D. Fla. Mar. 23, 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor is the Court required to accept allegations as true when those allegations are contradicted by exhibits or evidence. *See id.* (citations omitted) (denying complaint based on conclusory statements that were contradicted by the evidence of record). Here, Plaintiffs never mentioned false marking during the parties' prior multi-year relationship. (*See* Facts § I; *see also* FAC at ¶ 27 (noting relationship between the parties that ended in 2022). Plaintiffs also failed to mention anything on a false patent marking claim during months of correspondence leading up to and after the initiation of this action. (Facts § I.) Instead, Plaintiffs admitted on January 2, 2024 that they only "recently" became aware of this issue after they were researching the MAGZ product for their FAC. (*Id*.)

Second, a "patent pending" marking is reserved for applications that are on file but not for issued patents. Indeed, "[c]opying or otherwise simulating an article marked merely patent pending

10

during only the pendency of the corresponding patent application(s) before the Patent & Trademark Office *would not, by itself, be unlawful or otherwise constitute an invasion of any of the patentee's rights.*" *Loops, LLC v. Amercare Prod., Inc.*, No. C08-1064RSM, 2008 WL 5000374, at *4 (W.D. Wash. Nov. 20, 2008) (citations omitted) (emphasis in original) (further noting that only uses after a patent issues can constitute infringement). That is, there is no patent right, i.e., a right to exclude, until a patent issues. *Id*. Therefore, even if Plaintiffs were aware of an alleged "patent pending" marking on the MAGZ products prior to initiating this action, there is no reason Plaintiffs could not have sold any products they wished to until a patent issued with claims that covered Plaintiffs' products. By admitting Plaintiffs are unaware of any application pending, (*see* Mot. at 16), they tacitly admit they have no concept of what such claim scope would be. Therefore, Plaintiffs had no idea what they potentially could/could not sell if some patent did eventually issue. Nor is there any guarantee any application would mature into an issued patent. Indeed, half of applications filed do not.[1]

Third, and relatedly, Plaintiffs provide no factual support for their conclusory statement that they were prevented from selling products due to "recently" discovered marking. Courts find that allegations that false marking has discouraged parties from purchasing or using products are too conclusory to show competitive harm. *See, e.g.*, *ArtSkills, Inc. v. Royal Consumer Products, LLC*, No. 3:17-cv-1552 (VAB), 2018 WL 3520431, at *7–8 (D. Conn. Jul. 20, 2018) (dismissing claim of false marking because competitor's conclusory statements that defendant's statements had discouraged or deterred parties from purchasing or using products failed to indicate the harm that was suffered or state who specifically was discouraged or deterred); *Sukumar v. Nautilus, Inc.*,

---

[1] *See* Michael Carley et al., *What is the Probability of Receiving a U.S. Patent?*, 17 YALE J.L & TECH. 203 (2015) (concluding that only 55.8% of applications mature into patents).

11

785 F.3d 1396, 1402 (Fed. Cir. 2015) (holding that not all competitors can claim competitive injury and that dreaming of an idea but never attempting to put it into practice—e.g., no business plan or prototype—is insufficient to establish standing under § 292(b)). Indeed, Plaintiffs have not conveyed what product(s) they wanted to sell, what feature was similar to the MAGZ product, or when, where or how they wanted to sell such products, etc.

### 2. Plaintiffs Fail to Plead an Intent to Deceive.

Furthering the futility, Plaintiffs failed to properly plead other elements of their false marking claim. For example, Plaintiffs have not (and cannot) properly plead an intent to deceive. Plaintiffs' claim that the alleged marking is false hinges on PBA's decision to not voluntarily provide information about PBA's patenting activities *on claims not in the case*. (*See generally* Mot.) Plaintiffs ignore that PBA is under no obligation to engage in any pre- discovery exchange of information or provide it any information outside of and unrelated to any pending claim or defense. However, even if PBA's silence on the issue—via settlement discussions—was sufficient to show falsity, which it is not, that is still insufficient to state a claim. *See Herengracht*, 2011 WL 938995, at *4 (collecting cases and finding allegations that a defendant made false statements is insufficient to show intent under the heightened pleading standard).

Accordingly, Plaintiffs' Second Amended Complaint simply does not and cannot meet the heightened pleading requirements for a false marking claim and therefore this claim is futile.

### B. Plaintiffs Delayed Raising the Claim, Which Is Being Brought in Bad Faith and Will Cause Prejudice to PBA.

Plaintiffs Motion should be denied because of Plaintiffs own undue delay, bad faith or dilatory motive, and the undue prejudice to PBA if this amendment is allowed.

### 1. Undue Delay.

Motions for leave to amend will routinely be denied for "undue delay." *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1254–55 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (citation omitted) (denying motion to amend finding plaintiff failed to bring timely motion).

Here, and simultaneously with the filing of the FAC on January 2, 2024, Plaintiffs **admit** they were contemplating filing a claim against PBA for false marking but elected not to. (*See* Mot.) Thereafter, Plaintiffs proposed the deadline for amending the pleadings, which was stipulated to by the Parties, filed with the Court, and which the parties have been acting under. (*See supra* Factual and Procedural Background § II.) Plaintiffs even noted that they anticipated bringing a false marking claim on or before their self-imposed April 12 deadline. (*Id.*) Despite this, Plaintiffs allowed that deadline to pass but are now seeking an exception to this undue delay. To do so, Plaintiffs speciously claim they only now have enough information to bring this claim but, as discussed herein, Plaintiffs have **no more information** today than they did on January 2, 2024 or on April 12. Notably, Plaintiffs have not identified any additional evidence supporting their claim for false marking that supports their delay—other than their own lack of ability to locate evidence. (*See* Mot. at 17.) This warrants denial. *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming denial of motion for leave to amend under both Rules 15 and 16 when there was "no good reason why [the plaintiff] could not have made the motion earlier" and the movant had not explained its failure to include the amended claim in its original filing); *Vig v. All Care Dental, P.C.*, 588 Fed. Appx. 900, 901 (11th Cir. 2014) (holding the district court properly denied leave to amend under Rule 15(a) where plaintiff sought to add new claims based upon facts already known).

Moreover, if Plaintiffs allegations are accepted as true—which they should not be—then Plaintiffs knew about this marking issue for years but failed to ever raise the issue with PBA or in its first two complaints but waited until after the deadline to amend.

### 2. Plaintiffs are Acting in Bad Faith.

Contrary to Plaintiffs arguments, they do not have a good-faith basis to amend to add this claim. As described *supra* Argument § II, this claim lacks merit. In addition, Plaintiffs' repeated reliance on *Infinity Headwear* is inapt. (*See* Mot. *passim*.) There, Infinity moved for leave to amend the complaint to add a false marking claim. *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, 2016 WL 5372843, at *4 (S.D.N.Y. Sept. 26, 2016). Infinity argued that it had no way of verifying or testing the truth of the marking and that "[i]t was only through the course of discovery that Infinity was able to uncover sufficient facts to allege the … claim[] it [sought] to add." *Id*. (emphasizing that good cause to amend arises when a party finds additional information though traditional discovery practices, and then diligently seeks to amend.). Here, Plaintiffs cannot establish similar good cause because they have not learned any additional information before seeking to amend. *Id*.

The only reasonable explanation for Plaintiffs' delay and insistence to bring a false marking claim right now, without learning any new facts—not to mention that they only recently discovered and did not damage them—is that Plaintiffs desire to leverage more claims to extract a better settlement. That is, Plaintiffs are asserting meritless claims in bad faith.

### 3. Prejudice to PBA.

Finally, this Motion prejudices PBA by forcing them to (1) respond to this Motion and (2) potentially being forced to defend a claim for which Plaintiffs have no proof. (*See supra*). If Plaintiffs are allowed to bring their false marking claim, PBA will be forced to move to dismiss or engage in copious discovery on this claim, including into PBA's patent activities, PBA's

14

manufacturing processes and into those involved in placing any markings on products, PBA's alleged knowledge and intent, Plaintiffs' knowledge of PBA's products/markings, Plaintiffs' purported product plans, expert discovery on similarities and/or damages, etc. This wastes everyone's time and resources on a meritless claim and why such claims are subject to the heightened Rule 9(b) standard.

In summary, Plaintiffs have learned no new information since admitting they had no good-faith basis to bring this claim and either unreasonable waited to pursue it and/or are bringing it in bad faith and to prejudice PBA. Either way, Plaintiffs have not shown their burden to amend.

## CONCLUSION

For the foregoing reasons, PBA requests that the Court deny Plaintiffs' Motion.

Date: May 6, 2024

**FOX ROTHSCHILD LLP**

/s/ *Adam Wolek*
Adam Wolek (FL Bar No. 1033265)
777 South Flagler Drive, Suite 1700
West Palm Beach, FL 33401
Tel: 561.835.9600
Fax: 561.835.9602
awolek@foxrothschild.com

Lukas Toft (*pro hac vice*)
33 South 6th Street, Suite 3600
Minneapolis, MN 55402
Tel: 612.607.7000
Fax: 612.607.7100
ltoft@foxrothschild.com

**Attorneys for Defendant**
**Palm Beach Accessories, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, the foregoing document was served by electronic mail on all counsel of record for Plaintiffs identified in the Service List below.

>  */s/ Adam Wolek*
>  Adam Wolek, Esq.

## SERVICE LIST

| | |
|---|---|
| Kelli A. Edson, Esq. | Lori Anderson Ruhly, Esq. |
| Quarles & Brady LLP | Kristin Graham Noel, Esq. |
| 101 East Kennedy Blvd., Suite 3400 | Bryce A. Loken, Esq. |
| Tampa, FL 33602 | Quarles & Brady LLP |
| Kelli.Edson@quarles.com | 33 East Main Street, Suite 900 |
| Lauren.Gibson@quarles.com | Madison, WI 53703 |
| DocketFL@quarles.com | Lori.Ruhly@quarles.com |
| | Kristin.Noel@quarles.com |
| | Bryce.Loken@quarles.com |